**Thomas V. SICILIANO, Plaintiff,**

v.

**Fred W. SICILIANO et al., Defendants.**

**Civ. A. No. 74–495.**

United States District Court, W. D. Pennsylvania.

Dec. 18, 1975.

Joseph M. Zoffer, Martino, Ferris & Zoffer, Pittsburgh, Pa., for plaintiff.

Christopher Walters, Philadelphia, Pa., Joseph F. McDonough, J. Tomlinson Fort, John B. Gordon, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge.

This is a civil non jury proceeding whereby plaintiff claims that the defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C., Section 78j and Rule 10(b)(5) of the Securities Exchange Commission in that the defendants intentionally misrepresented and omitted certain material facts relating to the merger between Philadelphia Suburban Corporation and Siciliano Bros., Inc. The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel. Based thereon, it is the considered judgment of the Court that there is no merit to plaintiff's contentions.

The facts may be simply stated. The plaintiff, Thomas V. Siciliano was the eldest of three brothers who together in 1948 formed a general contracting corporation, Siciliano Bros., Inc., from a well known lathing and plastering firm started by their father. As the corporation prospered and grew, so did the differences between the plaintiff and his brothers. While Anthony and Fred Siciliano were seeking to develop the corporation into a complete interior contracting company, Tom Siciliano consistently opposed such plans and desired to confine the company's business to its traditional line of plastering and lathing.

On numerous occasions the plaintiff expressed his willingness to sell his interest in the company. Finally in September of 1971, Tom Siciliano offered to sell his 66 shares of stock to the corporation for the sum of $310,000.00. A purchase agreement for the sale of plaintiff's stock to the defendant, Siciliano Bros., Inc., was reviewed by the plaintiff's lawyer and found to be proper in every respect and contained the following:

"Siciliano Bros., Inc., will pay $310,000.00 for Tom Siciliano's 66 shares by paying $60,000.00 in cash, by delivering to him five promissory notes of $48,000.00 each which are payable at the rate of one per year beginning January 1, 1972, and by assigning to him two automobiles valued at $10,000.00."

" . . . upon payment in full of all such promissory notes, the escrow agent shall deliver all of my 66 shares of stock deposited with it to the corporation without any notice of further consent from me required."

The agreement further provided:

"Siciliano Bros., Inc., shall not have the option or right of prepayment of this note before the due date thereof without the written consent of Thomas V. Siciliano or the holder thereof."

"So long as Siciliano Bros., Inc., is not in default under this agreement, or in the payment of its promissory notes, it, and not I, (Thomas V. Siciliano), shall exercise and enjoy all the rights accuring from the ownership of the shares."

At the closing on September 30, 1971, plaintiff in the presence of his attorney also signed a general release.[1]

Following this transaction, Siciliano Bros., Inc. was contacted by Amerifino, Inc., a business brokerage firm specializing in mergers, seeking to determine whether or not Siciliano Bros., Inc. was interested in being acquired by a larger corporation. During the next six months, Siciliano Bros., Inc. and Philadelphia Suburban Corporation, which was the larger corporation that Amerifino, Inc. was referring to, engaged in negotiations concerning the possible merger of the two companies. While these talks progressed, Philadelphia Suburban Corporation expressed much concern over the fact that the plaintiff's 66 treasury shares, which were presently in escrow at Pittsburgh National Bank, were not subject to retirement and accordingly, Philadelphia Suburban Corporation would not be able to use the pulling of interest accounting method if the merger took place.

On February 5, 1972, the defendants, Fred and Anthony Siciliano, met with the plaintiff, Tom Siciliano, in an at-

---

1. The pertinent part of this release relative to this transaction contained the following: "Thomas V. Siciliano, for and in consideration of the sum of $1.00 to him in hand paid by Siciliano Bros., Inc., the receipt whereof is hereby acknowledged, and in consideration of the foregoing release made by Siciliano Bros., Inc., does hereby, for himself, his heirs, executors, administrators, and personal representatives, remise, release, and forever discharge Siciliano Bros., Inc, of and from all debts, demands, courses of action, contracts, agreements, and liabilities whatsoever, both in law and equity, for which the said Siciliano Bros., Inc. ever had, now has, or hereafter may have, for and upon or by reason of any matter whatsoever, from the beginning of the world to the date of these presence, excepting only the obligations of Siciliano Bros., Inc. under a letter agreement dated September 20, 1971."

tempt to remove the possible impediment to the merger. They explained to the plaintiff that they were presently negotiating for the sale of their company to the Philadelphia Suburban Corporation and that the proposed agreement of sale contemplated Philadelphia Suburban Corporation's purchase of Siciliano Bros., Inc. by giving unregistered stock in Philadelphia Suburban Corporation which would have the worth of four or five million dollars if it could be sold on the open market.[2] The plaintiff was informed that the merger was probably being held up because of the treasury shares in escrow which could not be released until the promissory notes were paid and that the Philadelphia Suburban Corporation might pay him between $150,000.00 and $200,-000.00 for his agreement to the prepayment of the promissory notes. On February 20, 1972, the plaintiff after consulting with his attorney agreed to prepayment of the promissory notes and executed an option agreement prepared by his attorney and which provided:

"Siciliano Bros., Inc. has the irrevocable right and option to purchase at any time within ninety (90) days from the date hereof, those four certain promissory notes, made by Siciliano Bros., Inc., payable to Thomas V. Siciliano, each in the amount of Forty-eight Thousand Dollars ($48,-000.00), payable January 1 of 1973, 1974, 1975, and 1976, respectively . . . for the consideration of the sum of Three Hundred and Ninety-two Thousand Dollars ($392,000.00) plus any and all interest accrued on

said notes . . . plus the cancellation and forgiveness of any and all indebtedness or alleged indebtedness of Thomas V. Siciliano to Siciliano Bros., Inc. . . . ."

On April 5, 1972, the plaintiff once again signed a general release in favor of defendants.[3]

The question for this Court's determination is whether or not the defendants, Anthony Siciliano, Fred Siciliano, and James Siciliano, knew or had reason to know of the prospective merger between Siciliano Bros., Inc. and Philadelphia Suburban Corporation prior to plaintiff's sale of his stock to the defendant corporation?

After a most exhaustive review of the record, the Court can find no basis to conclude that the defendants had any preconceived idea or knowledge of the merger. On the contrary, the evidence reflects that the plaintiff, Thomas Siciliano, initiated and promoted the sale of his 66 shares in Siciliano Bros., Inc. and that the defendants had negotiated for the sale in a fair and honest manner without the knowledge of the potential merger between Siciliano Bros., Inc., and Philadelphia Suburban Corporation. The Court is satisfied that it was purely coincidental, that after the sale, another company, through interjection of third persons, became interested in Siciliano Bros., Inc. either to buy it or to merge.

In addition, at the closing on September 30, 1971, the plaintiff in the presence of his attorney signed a general release. Where parties manifest and attempt to settle all accounts, a re-

2. The proposed agreement also provided that Fred Siciliano would retire and Anthony and James Siciliano would receive employment contracts with Philadelphia Suburban Corporation. (Following the sale of Tom Siciliano's stock to Siciliano Bros., Inc. in September of 1971, Fred Siciliano gave 33 of his 66 shares of stock to his son, James Siciliano.)

3. The settlement agreement provided the following: " . . . the optionor hereby releases and forever discharges Philadelphia Suburban Corporation and its officers and

directors, the Company and its subsidiaries, and those persons who are the Company's officers, directors, employees and shareholders, and each of them, from any and all actions, causes of action, claims and demands (All Claims), which he ever had, now has or hereafter may have, for, upon or by reason of any matter whatsoever from the beginning of the world to the date hereof, including, without limitation, All Claims under, growing out of or directly or indirectly related to the Letter Agreement, the Option Agreement, or said Agreement and Plan of Reorganization."

lease must be given full effect even to unknown claims. *Three Rivers Motors Company v. Ford Motor Company*, 522 F.2d 885 (3rd Cir., 1975). A release signed by a party is an absolute bar to an action unless that party can prove that the release was procured by fraud, duress, accident, or mutual mistake. Kent v. Fair, 392 Pa. 272, 140 A.2d 445, 1958. The record reflects that the plaintiff was aided by counsel at every important junction. During the original negotiations and closing for the sale of plaintiff's stock as well as the negotiations and closing for the option agreement which permitted the prepayment of the notes, plaintiff was aided and advised by his attorney.

■ To set aside this transaction on the grounds that the two releases signed by the plaintiff were procured by fraud, plaintiff must prove this fact beyond a reasonable doubt. *Vogel v. Taub*, 316 Pa. 41, 173 A. 270 (1934). It is the firm opinion of the Court that no basis exists even on the preponderance of the evidence to support a conclusion or finding of fraud on the part of the defendants.

In each instance, where a release was executed, the record reveals a full and fair opportunity for the plaintiff to be apprised of the situation. In fact, plaintiff sought and received, prior to entering into any transaction, the advice and expertise of his attorney who participated in and who was thoroughly advised of the entire situation. The plaintiff could well have agreed not to have his stock prepaid and stick to the original agreement which would have left his stock in escrow until the notes were paid. Nevertheless, plaintiff was fully aware of the merger talks between Siciliano Bros., Inc. and Philadelphia Suburban Corporation, but still went ahead and permitted the prepayment of the notes.

■ In view of the above, the Court is of the firm belief that plaintiff was counseled, advised, informed, and well understood what was going on from the moment he decided to sell out his interest in the defendant corporation to the moment he signed the option agreement permitting the prepayment of the notes. Moreover, the Court is convinced that there was no fraud perpetrated upon the plaintiff by any of the defendants. Therefore, plaintiff is not entitled to recover against the defendant, Siciliano Bros., Inc. or the individual members thereof. The liability of Philadelphia Suburban Corporation and the new corporation created as the operating entity of the old business must stem from the merger liability which existed or any liability found to exist on the part of the old corporation. The Court can find no course of conduct in any way whatsoever, directly or indirectly, on the part of Philadelphia Suburban Corporation or the operating corporation which was created after the merger of the old corporation in which the plaintiff owned one-third of the stock originally, which under any stretch of the imagination, could create any liability. Accordingly, since there is no liability on the part of Siciliano Bros., Inc. or the individual members thereof, there is no liability on the part of Philadelphia Suburban Corporation or the operating company.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

## ORDER

And now, this 18th day of December, 1975, judgment is entered in favor of the defendants, Fred W. Siciliano, Anthony N. Siciliano, Vincent J. Siciliano, Bros., Inc., Siciliano Interior Systems Company and Philadelphia Suburban Corporation, and against the plaintiff, Thomas V. Siciliano. Costs are to be paid by the plaintiff.